# United States District Court
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 6:13-cr-83 |
| | § | |
| RODERRETE DEWRAYNE McCLURE | § | |

## MEMORANDUM OPINION

On October 21, 2014, the Court issued a Preliminary Order (Doc. No. 75)[1] that **DENIED** Defendant's Motion to Dismiss the Indictment (Doc. No. 43). The Court now issues this memorandum opinion.

The ultimate issue presented here is: Did Defendant have an objectively reasonable belief at the time he entered a plea agreement in another case that he would not be prosecuted for conduct forming the basis of this case. In 2012, Defendant entered a plea of guilty pursuant to a plea agreement with the Government in Cause No. 9:11-cr-38 in the Lufkin Division of the Eastern District of Texas (the Lufkin Gun Case). The Government agreed not to bring further charges against Defendant based on conduct underlying and related to Defendant's plea of guilty. Specifically, the Governments promise reads as follows:

> **8. GOVERNMENT'S AGREEMENT** The United States Attorney for the Eastern District of Texas agrees not to prosecute the defendant for any additional non-tax related charges based upon the conduct *underlying and related to* the defendant's plea of guilty. After sentencing, the government will dismiss any remaining charges against this defendant.

(Doc. No. 43-2 at 6 (emphasis added)).

In August 2013, a Federal Grand Jury for the Eastern District of Texas, Tyler Division, returned the indictment in the current case on drug trafficking and firearms charges (Drug

---
[1] Unless otherwise indicated, all references to the docket are to docket entries in this case.

Trafficking Conspiracy). Defendant now moves to dismiss this indictment, contending that the Government breached their plea agreement by bringing the current charges because they underlie and relate to his conduct in the Lufkin Gun Case. Having considered the parties' arguments, the applicable law, and the terms of the plea agreement, the Court finds that Defendant did not carry his burden of proving facts by a preponderance of the evidence that show the Government breached the plea agreement in the Lufkin Gun Case.

## Factual and Procedural History

Both the Government and Defendant agree on many of the essential facts in this case. Both agree that in the fall of 2010 the Government began investigating Defendant for the theft and sale of drugs from the evidence room in the Tenaha, Texas, City Marshal's Office. Both also agree that while executing a search warrant in connection with its investigation of the Drug Trafficking Conspiracy, the Government discovered that Defendant possessed several firearms in his home that were illegal due to his prior felony conviction. Neither party disputes that the Government then charged Defendant with being a felon in possession of firearms discovered in his home in the Lufkin Gun Case. Nor do the parties dispute that the Lufkin Gun Case resulted in Defendant's plea of guilty and that in exchange for his guilty plea the Government agreed not to bring any further charges against him based on conduct underlying and related to his plea of guilty to possessing firearms found in his home. Finally, both agree that Defendant is currently indicted on drug trafficking and firearms charges as the result of the Government's investigation of the Drug Trafficking Conspiracy.[2]

---

[2] Tenaha is in the Lufkin Division of the Eastern District of Texas. The Government brought this case in the Tyler Division of the Eastern District of Texas based on its allegation that an unindicted co-conspirator transported drugs through Smith County, Texas, which is in the Tyler Division.

The parties' dispute is a legal one: Are the current charges against Defendant based on conduct that underlies and relates to his plea of guilty to being a felon in possession of firearms in the Lufkin Gun Case? The reason for that legal dispute is that the parties draw far different conclusions from the facts that underlie those they agree on. That full set of facts spans four years and interweave and overlap throughout.

Having considered the extensive briefing (Doc. Nos. 43, 46, 56, 73, 74), as well as both the testimony of seven witnesses and nearly thirty exhibits presented during the evidentiary hearing on Defendant's motion (Doc. No. 68), the Court now sets outs it findings and conclusions. The Court finds the facts below to be true by a preponderance of the evidence. Because of the interweaving and overlapping nature of the facts, this opinion lays out the facts in as close to chronological order as possible.

### A. Drug Trafficking Conspiracy

In August 2009, Defendant and then Tenaha City Marshal, Fred Walker,[3] began stealing drugs out of the evidence room in the Tenaha Marshal's Office. They stole drugs from the evidence room several more times up to and into August 2010. That month, Defendant and Walker staged a burglary of the Marshal's Office. They planted evidence to make it appear that members of a Mexican drug cartel committed the burglary.

During the burglary, Defendant and Walker stole drugs and guns. As will be seen, they sold or attempted to sell the drugs. Importantly, they did not attempt to sell the guns. Instead, they dumped them in a creek outside of Tenaha.

In November 2010, both Defendant and Walker received extortion letters from a sender who identified himself as "Jack Frost." Both letters demanded that the recipient pay "Jack Frost" $70,000 or else "Jack Frost" would expose that Defendant and Walker were selling drugs stolen

---

[3] Walker is an unindicted co-conspirator in the Drug Trafficking Conspiracy.

from the evidence room in Tenaha. According to Special Agent Stewart Fillmore of the Federal Bureau of Investigation, the "Jack Frost" letters were crucial to the Government's investigation of the Drug Trafficking Conspiracy because Walker gave copies of them to Special Agent Fillmore.

Special Agent Fillmore then investigated the letters and learned that "Jack Frost" was actually a Dallas-area man named Tracy Fortman. Fortman told the FBI that he was trying to sell the drugs Defendant and Walker stole from the Tenaha evidence room. Fortman also told Special Agent Fillmore that Defendant and Walker staged the burglary of the Tenaha Marshal's Office to cover up their theft. Fortman told the FBI that he sent the "Jack Frost" letters because he needed money due to his lack of success in moving the drugs Defendant provided him.

In addition to information about the Drug Trafficking Conspiracy, Fortman gave Special Agent Fillmore a picture of a well-stocked gun cabinet in Defendant's living room. By that time, Special Agent Fillmore knew that Defendant had a prior felony conviction, making Defendant's possession of those guns illegal. And by that time, Fillmore testified that he already knew about other incriminating evidence against Defendant. Defendant had admitted to another FBI agent and a Texas Ranger that he had, at Walker's request, installed recording equipment in both the Tenaha Marshal's Office and City Hall, a violation of the federal wiretapping statute, 18 U.S.C. § 2511. Importantly, he told the investigators that he stored the recordings on various computers and hard drives in his house.

**B. Search Warrant**

The FBI obtained a search warrant for Defendant's home. The affidavit supporting the warrant referenced not only the surreptitious recordings in violation of the federal wiretapping

statute, but also that Defendant, a convicted felon, possessed several firearms, making him a felon in possession of firearms.

The search turned up no evidence of the recordings. But the search did reveal that Defendant possessed thirteen firearms, a body armor vest, and more than 1,000 rounds of ammunition, all of which were illegal due to Defendant's prior felony conviction.

After the search, Defendant agreed to talk with the investigators. He admitted that he and Walker had stolen drugs from the Tenaha evidence room and had staged the burglary to cover their tracks.

### C. The Lufkin Gun Case

After the search turned up the guns in Defendant's home, the Government filed a criminal complaint against Defendant for being a felon in possession of firearms in violation of 18 U.S.C. § 922(g) (Cause No. 9:11-cr-38, Doc. No. 1). Then a Federal Grand Jury for the Eastern District of Texas, Lufkin Division, returned an indictment against Defendant, which became the Lufkin Gun Case (Cause No. 9:11-cr-38, Doc. No. 5).

While being transported to Beaumont for his initial appearance, Defendant disclosed additional information about the staged burglary: That he and Walker had thrown the guns they stole from the Tenaha evidence room in a creek outside of Tenaha. Later, the agents investigating the case recovered those guns from the creek.

Then, the Lufkin Gun Case—involving the weapons found at Defendant's home—was set for trial. Assistant United States Attorney Lisa Flournoy filed a notice that she intended to introduce the other guns—the guns stolen from the Tenaha evidence room—as character evidence under Federal Rule of Evidence 404(b) (Doc. No. 43-10). In response, Defendant filed

statute, but also that Defendant, a convicted felon, possessed several firearms, making him a felon in possession of firearms.

The search turned up no evidence of the recordings. But the search did reveal that Defendant possessed thirteen firearms, a body armor vest, and more than 1,000 rounds of ammunition, all of which were illegal due to Defendant's prior felony conviction.

After the search, Defendant agreed to talk with the investigators. He admitted that he and Walker had stolen drugs from the Tenaha evidence room and had staged the burglary to cover their tracks.

### C. The Lufkin Gun Case

After the search turned up the guns in Defendant's home, the Government filed a criminal complaint against Defendant for being a felon in possession of firearms in violation of 18 U.S.C. § 922(g) (Cause No. 9:11-cr-38, Doc. No. 1). Then a Federal Grand Jury for the Eastern District of Texas, Lufkin Division, returned an indictment against Defendant, which became the Lufkin Gun Case (Cause No. 9:11-cr-38, Doc. No. 5).

While being transported to Beaumont for his initial appearance, Defendant disclosed additional information about the staged burglary: That he and Walker had thrown the guns they stole from the Tenaha evidence room in a creek outside of Tenaha. Later, the agents investigating the case recovered those guns from the creek.

Then, the Lufkin Gun Case—involving the weapons found at Defendant's home—was set for trial. Assistant United States Attorney Lisa Flournoy filed a notice that she intended to introduce the other guns—the guns stolen from the Tenaha evidence room—as character evidence under Federal Rule of Evidence 404(b) (Doc. No. 43-10). In response, Defendant filed

a motion to suppress, arguing that he disclosed the location of the guns in the midst of his jail transfer without being *Mirandized* (Cause No. 9:11-cr-38, Doc. No. 63).

United States District Judge Ron Clark, who presided over the Lufkin Gun Case, held a hearing on the motion to suppress. Judge Clark was apparently skeptical about the weapons' admissibility. He described the guns stolen from the Tenaha evidence room as being peripheral in nature because they were linked to "this other crime which is still under investigation" (Doc. No. 43-13 at 182:18–19, 182:25–183:1). Because they related to the "other crime which [was] still under investigation," Judge Clark excluded the guns stolen from the Tenaha evidence room as being more prejudicial than they were probative.

Six days after the suppression hearing, Defendant entered into the subject plea agreement. He pleaded guilty to a single count of being a felon in possession of firearms. Along with his plea agreement, Defendant signed a factual resume describing his possession of the thirteen guns found in his home and his prior felony conviction (Cause No. 9:11-cr-38, Doc. No. 94 at 1–2).

At the sentencing hearing in the Lufkin Gun Case, Defendant received a downward departure and was sentenced below the advisory guideline range.

### D. Current Indictment

AUSA Flournoy also headed the Government's investigation of the Drug Trafficking Conspiracy, which was ongoing during the Lufkin Gun Case. But shortly after the Lufkin Gun Case was closed, AUSA Flournoy resigned her position and entered private law practice.

After the case was shuffled within the United States Attorney's Office, the Government completed its investigation of the Drug Trafficking Conspiracy as it relates to Defendant. On August 28, 2013, a Federal Grand Jury for the Eastern District of Texas, Tyler Division, returned the current indictment.

The current indictment alleges that Defendant engaged in a conspiracy to distribute marijuana and prescription drugs stolen from the Tenaha evidence room. The indictment also alleges that Defendant possessed firearms while trafficking drugs and while being a convicted felon. The firearms referenced in the current indictment are the firearms that were the subject of the 404(b) notice and motion to suppress in the Lufkin Gun Case. They are not the firearms that resulted in Defendant's conviction in the Lufkin Gun Case—the firearms found in his home.

## **Legal Standard**

If a guilty plea is entered as part of a plea agreement, the government must strictly adhere to the terms and conditions of its promises. *United States v. Kerdachi,* 756 F.2d 349, 351–52 (5th Cir. 1985). If a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262 (1971). If the government does not fulfill its promise, a breach occurs. *Id.*

The defendant bears the burden of proving that the government breached a plea agreement. *United States v. Lewis*, 476 F.3d 396, 387 (5th Cir. 2007). That burden is to prove facts by a preponderance of the evidence that show the government breached the plea agreement. *Id.* The government breaches a plea agreement when its conduct is inconsistent with the defendant's reasonable understanding of the plea agreement. *United States v. Huddleston,* 929 F.2d 1030, 1032 (5th Cir. 1991).

The reasonable understanding inquiry is an objective—not subjective—inquiry. *See United States v. Wittie*, 25 F.3d 250, 262 (5th Cir. 1994); *cf. Johnson v. Beto*, 466 F.2d 478, 480 (5th Cir. 1972) (holding that a plea agreement cannot be based on the defendant's "mere expectation or hope"). And because a plea agreement is a contract between the parties, the Court

The current indictment alleges that Defendant engaged in a conspiracy to distribute marijuana and prescription drugs stolen from the Tenaha evidence room. The indictment also alleges that Defendant possessed firearms while trafficking drugs and while being a convicted felon. The firearms referenced in the current indictment are the firearms that were the subject of the 404(b) notice and motion to suppress in the Lufkin Gun Case. They are not the firearms that resulted in Defendant's conviction in the Lufkin Gun Case—the firearms found in his home.

## **Legal Standard**

If a guilty plea is entered as part of a plea agreement, the government must strictly adhere to the terms and conditions of its promises. *United States v. Kerdachi,* 756 F.2d 349, 351–52 (5th Cir. 1985). If a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262 (1971). If the government does not fulfill its promise, a breach occurs. *Id.*

The defendant bears the burden of proving that the government breached a plea agreement. *United States v. Lewis*, 476 F.3d 396, 387 (5th Cir. 2007). That burden is to prove facts by a preponderance of the evidence that show the government breached the plea agreement. *Id.* The government breaches a plea agreement when its conduct is inconsistent with the defendant's reasonable understanding of the plea agreement. *United States v. Huddleston,* 929 F.2d 1030, 1032 (5th Cir. 1991).

The reasonable understanding inquiry is an objective—not subjective—inquiry. *See United States v. Wittie*, 25 F.3d 250, 262 (5th Cir. 1994); *cf. Johnson v. Beto*, 466 F.2d 478, 480 (5th Cir. 1972) (holding that a plea agreement cannot be based on the defendant's "mere expectation or hope"). And because a plea agreement is a contract between the parties, the Court

applies contract principles to determine the reasonable understanding of the plea agreement. *Lewis*, 496 F.3d at 387. Thus, unless it is ambiguous, the Court determines the reasonable understanding of the plea agreement based on its plain language. *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013).

## Analysis

As noted above, the parties' main dispute is a legal one: Are the current charges against Defendant for his role in the Drug Trafficking Conspiracy based on conduct that underlies and relates to his plea of guilty to being a felon in possession of firearms in the Lufkin Gun Case? Resolving that dispute first requires determining what the disputed terms of the plea agreement in the Lufkin Gun Case mean because that meaning supplies the objective understanding of the plea agreement. After determining the objective understanding, resolving the dispute then requires analyzing whether Defendant proved facts by preponderance of the evidence that shows the Government acted inconsistently with the objective understanding of the plea agreement. Accordingly, this opinion first determines the meaning of the disputed terms in the plea agreement of the Lufkin Gun Case and then applies that meaning to the facts. Additionally, the Court addresses fairness concerns that Defendant raised both in his brief and at the evidentiary hearing even though they do not bear on the inquiry the Court must undertake to resolve Defendant's motion.

**A. The Meaning of the Plea Agreement**

The parties' dispute turns on the meaning of the Government's agreement not to prosecute Defendant "based upon the conduct underlying and related to the defendant's plea of guilty" in the Lufkin Gun Case (Doc. No. 43-2 at 6). At its core, the parties' dispute turns only on the meaning of the two modifiers "underlying" and "related to."

Because the parties' dispute turns on the meaning of "underlying" and "related to," the Court must determine whether those two terms have a plain meaning. *Long*, 722 F.3d at 262. *Underlying* means "to be at the basis of." *Webster's II New Riverside University Dictionary* 1257 (1994). *Related to* means "to bring into logical or natural association." *Id.* at 992. Neither the language nor the structure of the plea agreement suggests that any other meaning of these words should apply. *See Long*, 722 F.3d at 262 ("[W]hen a [plea agreement] is unambiguous, this court generally will not look beyond the four corners of the document.").

The two modifiers in dispute are joined together with a conjunction: specifically, the word "and."[4] Thus, the Government agreed not to bring a very specific kind of charge against Defendant. The prohibited charge is one that is based not only on conduct that forms the basis of (underlying) the Defendant's plea of guilty to possessing firearms found in his home, but also is logically or naturally associated with (related to) Defendant's plea of guilty to possessing the firearms found in his home. In view of the unambiguous meaning of the contested clause of the plea agreement in the Lufkin Gun Case, that unambiguous meaning supplies the "reasonable understanding" Defendant must establish that the Government acted contrary to. *See id.*[5]

**B. Evidence of a Breach**

As set out above, the Government agreed not to bring charges based on conduct that forms the basis of (underlies) and is logically or naturally associated with (relates to) Defendant's plea of guilty in the Lufkin Gun Case. As such, a breach occurs if the Government brought charges in this case that it agreed not to bring. *See Long*, 722 F.3d at 262 (quoting *United States v.*

---

[4] The Court notes that its conclusion that Defendant did not meet his burden of proving a breach of the plea agreement would not change if the modifiers were joined disjunctively—namely, the word "or."

[5] At the hearing, Defendant argued that if the two courses of conduct do not underlie and relate to one another, then the plea agreement is ambiguous because he understood it to cover both courses of conduct. But a Defendant's assertion that a plea agreement has a different meaning than its unambiguous meaning does not render a plea agreement ambiguous. *See Felicano v. United States*, 914 F. Supp. 776, 780 (D. P.R. 1996).

*Robinson*, 624 F.3d 241, 246 (5th Cir. 2010)). Determining whether the Government did so requires comparing the two courses of conduct.

In the Lufkin Gun Case, Defendant pleaded guilty to possessing guns found in his home. The factual basis of Defendant's plea of guilty in the Lufkin Gun Case states that Defendant possessed the guns found in his home while he had a prior felony conviction (Cause No. 9:11-cr-38, Doc. No. 94 at 1–2). On the other hand, the indictment in this case alleges that Defendant engaged in a conspiracy to distribute drugs stolen from the Tenaha evidence room and that he possessed firearms stolen from the Tenaha evidence room while trafficking drugs and while being a convicted felon.

In view of these facts, the two cases involve two separate and distinct courses of conduct. For example, all of the conduct in this case is alleged to have taken place months before the Government discovered the relevant conduct in the Lufkin Gun Case. Additionally, whereas the relevant conduct in this case occurred in the Tenaha Marshal's Office, the relevant conduct in the Lufkin Gun Case took place at Defendant's home. Not only are the two courses of conduct temporally and geographically distinct, they also implicate different statutory violations and involve two completely unrelated sets of firearms. Further, Walker, an unindicted co-conspirator in the Drug Trafficking Conspiracy, is not, nor could he be, a co-conspirator in the Lufkin Gun Case.

In cases where the Government subsequently prosecuted a defendant based on conduct that is not only temporally and geographically distinct from the original prosecution but also involved different statutory violations and co-conspirators, no breach of the plea agreement was found. *Wittie*, 25 F.3d at 263 ("It is obvious that two distinct conspiracies were involved: they were separated by time; . . . they involved different statutory offenses; they included different

overt acts in each offense charged; and they occurred in different geographical locations."); *see Lewis*, 476 F.3d at 387–88 (finding no breach of plea agreement with serial prosecutions for defendant's role in a drug trafficking ring where the first prosecution was based on a narrower set of overt acts and co-conspirators than the second prosecution and the two sets of overt acts occurred during different time periods).

In view of the temporal, geographic, and statutory characteristics of the two courses of conduct, the Drug Trafficking Conspiracy neither forms the basis of (underlies) nor is it logically or naturally associated with (relates to) the Lufkin Gun Case. Thus, in bringing the current charges against Defendant, the Government did not bring charges that the plea agreement in the Lufkin Gun Case precludes. Instead, the Government brought two distinct sets of charges resulting from two separate courses of conduct, which is permissible under the plea agreement in the Lufkin Gun Case. Accordingly, Defendant has not proven the Government acted contrary to an objectively reasonable belief about the plea agreement. *See Long*, 722 F.3d at 262 (quoting *Robinson*, 624 F.3d at 246).

At best, Defendant presented evidence that could establish he possessed a subjective belief that the plea agreement in the Lufkin Gun Case prohibited the Government from bringing the current charges. But evidence of a subjective belief is not sufficient to establish breach of a plea agreement. *See Wittie*, 25 F.3d at 262 ("[E]ven if [defendant] somehow subjectively clung to the belief that he could not be prosecuted for the [subsequent] offense, that is not a reasonable understanding of the plea agreement.").

Defendant relied heavily on the testimony of Lori Mack, Defendant's attorney in the Lufkin Gun Case.[6] Ms. Mack testified that she had the impression his plea agreement in the

---

[6] Although a Federal Public Defender was appointed to represent him (Cause No. 9:11-cr-38, Doc. No. 10), Defendant later retained Ms. Mack to represent him (Cause No. 9:11-cr-38, Doc. No. 58).

Lufkin Gun Case covered Defendant's role in the Drug Trafficking Conspiracy. She explained that her only basis for this impression was the proximity of the plea negotiations and the suppression hearing in the Lufkin Gun Case.

But the Government pointed to other evidence that discredits Ms. Mack's impression. First, the Government notes that Judge Clark excluded the guns stolen from the Tenaha evidence room in the Lufkin Gun Case because he considered the two courses of conduct to be separate. Second, the Government points to AUSA Flournoy's testimony, which the Court finds credible, that she never gave any basis for Ms. Mack to believe that the plea agreement in the Lufkin Gun Case would cover Defendant's role in the Drug Trafficking Conspiracy. Finally, the Government argues that crediting Ms. Mack's impression is difficult because she did not receive discovery relating to the Drug Trafficking Conspiracy, making it difficult to ascertain how she determined that two courses of conduct are related enough to be covered by the plea agreement in the Lufkin Gun Case. On balance, the Court finds the evidence the Government points to discredits Ms. Mack's impression of the plea agreement.

Defendant also argues that the two courses of conduct must underlie and relate to one another because the investigators and the file numbers are the same for both courses of conduct. But the officers in charge of the investigation, Special Agent Fillmore and ATF Agent Blaine Gillis, undermined that argument. Both were questioned about the overlap. Their testimony revealed that the overlap exists solely because they discovered the guns in Defendant's home (that led to his conviction in the Lufkin Gun Case) while investigating the Drug Trafficking Conspiracy—not because of any other connection. Even without their testimony, the overlap of the investigations does not prove that Defendant had an objectively reasonable belief that the Government could not prosecute him for the Drug Trafficking Conspiracy. *See Wittie*, 25 F.3d at

262 ("[E]ven if [defendant] somehow subjectively clung to the belief that he could not be prosecuted for the [subsequent] offense, that is not a reasonable understanding of the plea agreement.").

Having considered all of the evidence, the Court finds that Defendant did not prove facts by a preponderance of the evidence that establish the Government breached the plea agreement by acting contrary to an objectively reasonable understanding of the plea agreement.

### C. Fairness Concerns

Defendant argues that even if he did not meet his evidentiary burden to establish a breach of the plea agreement, fairness concerns should compel the Court to dismiss the indictment in this case. In his brief, Defendant argued that the Government induced him into pleading guilty in the Lufkin Gun Case only to serially prosecute him, which is not how the Government typically proceeds. To support his argument, Defendant contends that the Government filed the current charges in the Tyler Division, rather than the Lufkin Division, to avoid having to proceed before Judge Clark, who was already familiar with the Lufkin Gun Case and had ruled in favor of Defendant on his motion to suppress.

The Government acknowledged that it typically brings all the charges it has against an individual in one indictment, which it is not the case here. But the Government also explained that at the time it proceeded to prosecuting the Lufkin Gun Case, it was still investigating the full extent of the Drug Trafficking Conspiracy—especially as it pertained to Defendant's role in trafficking the stolen drugs. As for the change of venue, the Government explained that it filed the case in Tyler simply because personnel turnover in the United States Attorney's Office made it more convenient to litigate in the Tyler Division and this crime, unlike the Lufkin Gun Case, has ties to the Tyler Division. *See supra* note 2. The Court finds these explanations

credible, and therefore, the facts Defendant points to do not establish bad faith on the part of the Government.

At the hearing, Defendant raised an additional argument for the first time. Defendant argued that Ms. Mack's impression that the plea agreement in the Lufkin Gun Case would cover the Drug Trafficking Conspiracy constitutes ineffective assistance of counsel. Defendant contends that the Court must rectify Ms. Mack's error by dismissing the indictment in this case.

The record does not support that Defendant was induced to plead guilty as the result of any promise other than those contained in his plea agreement. Further, and as noted above, at the time Defendant pleaded guilty to the Lufkin Gun Case, the Government was in the midst of determining the full scope of Defendant's involvement in the Drug Trafficking Conspiracy. Thus, there is no evidence that the Government was prepared to or would have made a plea offer in the Lufkin Gun Case that also resolved Defendant's responsibility for the Drug Trafficking Conspiracy. As such, the Court is not convinced that Ms. Mack was ineffective within the meaning of the Sixth Amendment—especially considering Defendant also received a sentence below the advisory guideline range in the Lufkin Gun Case. *United States v. Henges*, No. 13-41077, 2015 WL 331112, at *1 (5th Cir. Jan. 27, 2015) (per curiam) (citing *Long*, 722, F.3d at 261); *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) (per curiam).

Accordingly, the Court concludes that Defendant's fairness concerns do not compel a dismissal of the indictment.

### **Conclusion**

Defendant at best presented evidence that he may have had a subjective belief that the plea agreement in the Lufkin Gun Case precluded the Government from bringing charges against him for his role in the Drug Trafficking Conspiracy. But the evidence shows that Defendant

engaged in two crimes with two sets of firearms that led to two indictments, which is permissible under the plain meaning of the plea agreement in the Lufkin Gun Case. Thus, Defendant did not prove facts by a preponderance of the evidence that establish the Government breached the plea agreement by acting inconsistent with an objectively reasonable belief about the plea agreement.

**SIGNED this 12th day of February, 2015.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE